IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

KHALILAH BROWN, on behalf of )
K.C.B., a minor, )
 )
      Plaintiff, )
 )
vs. )   Case No. 14-cv-97-TLW
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
 )
      Defendant. )

## OPINION AND ORDER

Plaintiff Khalilah Brown, on behalf of K.C.B., a minor child, seeks judicial review of the Commissioner of the Social Security Administration's decision finding that K.C.B is not disabled. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 8). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical

impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

**Sequential Evaluation for Child's Disability Benefits**

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment which: (1) meets, medically equals, or functionally equals the listings of impairments for children;[1] and (2) meets the duration requirement.

If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The six domains are: (1) Acquiring and using information; (2) Attending and completing tasks; (3)

---

[1] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## BACKGROUND INFORMATION

Plaintiff, then a 5-year old male, applied (through his mother) for Title XVI benefits on March 22, 2011, alleging a disability onset date of December 1, 2010. (R. 114-19). Plaintiff claimed that he was disabled due to ODD, ADHD, and "bipolar with poss schizophrenia." (R. 131). Plaintiff's claim for benefits was denied initially on July 5, 2011, and on reconsideration on September 29, 2011. (R. 44, 47-50; 45, 58-61). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on September 7, 2012. (R. 31-43). The ALJ issued a decision on November 7, 2012, denying benefits and finding plaintiff not disabled because he did not have the requisite limitations in the domains of functioning. (R. 11-27). The Appeals Council denied review, and plaintiff appealed. (R. 1-6; dkt. 2).

Plaintiff raises three issues on appeal: (1) that the ALJ erred in concluding that plaintiff's asthma did not medically equal Listing 103.03; (2) that the ALJ erred in finding that plaintiff does not suffer an extreme or marked limitation in the domain of health and physical well-being; and (3) that the ALJ erred in finding that plaintiff does not suffer a marked limitation in the domain of attending and completing tasks. (Dkt. 13).

**The ALJ Decision**

The ALJ found that plaintiff was a preschooler at the time of his application but a school-age child at the time of the decision. (R. 17). Plaintiff had not engaged in any substantial gainful

activity since March 22, 2011, the application date. Id. The ALJ determined that plaintiff had severe impairments of oppositional defiant disorder ("ODD"), attention deficit hyperactivity disorder ("ADHD"), asthma, and low IQ. Id. Plaintiff's impairments, however, did not meet or medically equal a listing. Id.

The ALJ then reviewed the testimony and record evidence. (R. 17-20). Plaintiff's mother testified that her son is seven years old, lives in a townhouse with her, her girlfriend, and a dog. She said that she filed for benefits because "she needs help and did not know what else to do." (R. 18). Plaintiff's behavior in kindergarten was "outrageous," and his teachers would call his mother "constantly and have her talk to him or pick him up from school. They made her seek help, not just for him, but also for her." Id. Plaintiff's mother said she has diagnoses of bipolar disorder and attention deficit disorder (ADD). Id. She received fewer calls for her son in first grade, and he received detention once in first grade. Id. He recently began second grade, and plaintiff's mother has already received three calls about his behavior. Id. She said he disrupted a classroom for an entire day, he "cannot seem to work with the rest of the class," and he has problems at home. His mother punishes him at home by taking away toys. Id.

Plaintiff's mother said he has trouble sleeping and must take medication to sleep. Id. He wakes often at night. Id. Plaintiff must be reminded to complete his chores, which are caring for his dog, keeping his room clean, taking out the trash, and helping with the dishes. (R. 18, 19). His medication side effects are sleeplessness, and when he "comes down off Adderall," he is "moody and angry." (R. 18). He once hit another child with scissors when angry. (R. 19). Plaintiff has asthma which "acts up every time the season changes," and he carries an inhaler with him. Id. He was hospitalized for three days after an emergency room visit in 2010 due to his asthma. Id.

Plaintiff underwent an evaluation at Daybreak Behavioral Health Services on November 17, 2010. Id. This evaluation resulted in initial diagnoses of "unspecified disturbance of conduct with moderate problems with primary support and financial difficulties and severe problems with school and social relations; with a Global Assessment of Functioning (GAF) of 47, which is considered serious symptoms." Id. Plaintiff was experiencing problems daily, and had been sent home from school on numerous occasions. Id. He "reportedly" had trouble with focus and concentration, and was easily distracted. Id. His biological father was not in his life. Id. Problems listed after plaintiff's evaluation were:

> [Plaintiff] engaged in disruptive/attention seeking behavior
> He had poor coping skills
> He had difficulties managing and expressing his anger in an appropriate manner
> [Plaintiff's] mother lacked effective parenting skills
> He lacked age appropriate life and social skills
> (Exhibit 1F)

Id.

Shital Gaitonde, Ph.D. and Richard Walton, Ph.D. performed a psychological examination of plaintiff on December 2, 2010, administering several tests. Id. Plaintiff achieved a full scale IQ of 84, a non-verbal score of 96, and a verbal score of 73 on the Stanford-Binet Intelligence Scale, fifth edition. Id. Plaintiff scored below the expected level on the task of assessing motor persistence and inhibition, his adaptive behavior composite was in the 47th percentile range, and his overall functional communication, community, and daily skills "fell well within age expectations." Id. Only his motor skills were slightly below average. Id. At the time of the examination, plaintiff was not taking any medications. Id.

Plaintiff's overall cognitive functioning was below average, and his non-verbal abilities were significantly better developed than his verbal abilities. Id. "Attention testing revealed that [plaintiff's] selective and sustained attention and his ability to shift and maintain attention were in the average range." Id. Plaintiff's motor persistence and inhibition were below average. Id.

5

Drs. Gaitonde and Walton assessed plaintiff with ODD, ADHD, not otherwise specified, problems with primary support group, and assigned a "GAF of 55, which is considered moderate symptoms (Exhibit 2F)." Id.

Christopher Puls, M.D. of Morton Comprehensive Health Clinic placed plaintiff on 5 mg of Adderall once a day in January 2011. (R. 20). By May, 2011, Dr. Puls' records noted that plaintiff was responding well to treatment with no adverse effects from his medication. Id. Plaintiff was eating and sleeping okay, his mood was stable, and he was able to stay on task. Id.

Tomi Bentley, plaintiff's special education teacher at Discovery School of Tulsa, completed a teacher questionnaire on May 25, 2011 suggesting that plaintiff be held back in kindergarten, but he was not. Id. Ms. Bentley also noted that plaintiff had no educational disabilities. Id. The ALJ noted that records from McClure Elementary School showed that plaintiff received satisfactory grades in first grade, and that two of his grades were excellent. Id.

The ALJ noted that plaintiff's "medications are for his asthma and his mental disorders" and "are consistent with the medical records." Id.

The ALJ afforded little weight to the "screening information from Daybreak Behavioral Health Services" because it was "mainly based on plaintiff's mother's statements," no testing was performed, and it was not known "if the evaluation was performed by an acceptable medical source." Id. However, the evaluation from Drs. Gaitonde and Walton received "considerable weight" because "[t]hey are experts in their field and testing was performed along with their evaluations." Id. Drs. Gaitonde and Walton diagnosed plaintiff with ODD and ADHD, and strongly recommended placing him on medication to manage his symptoms. Id. The ALJ afforded Dr. Puls' records, a psychiatrist from Morton Health Services, significant weight because Dr. Puls placed plaintiff on medication in January 2011, and by May 2011, plaintiff was

"doing well with no side effects. He was sleeping and eating better, and his mood was stable and he could stay on task." Id.

The ALJ also gave substantial weight to the childhood disability form completed by the State agency, although he noted confusion over the State agency's listing of the impairments of bipolar and schizophrenia because these two diagnoses were not found in plaintiff's medical records. Id. The State agency rated plaintiff as "less than marked in acquiring and using information and attending and completing tasks. The rest of the domains had no limitations (Exhibit 4F)." Id.

Plaintiff's school records showed no problems. Id. Neither the Discovery School of Tulsa nor McClure Elementary School indicated that plaintiff was in need of any special education programs, and neither school indicated that plaintiff had problems. Id. Plaintiff's grades from McClure Elementary were either satisfactory or excellent. Id.

Based on this evidence, the ALJ made findings regarding plaintiff's functional abilities in the six domains of functioning. In the area of Acquiring and Using Information, plaintiff had a less than marked limitation. (R. 21). The ALJ found that "psychological testing indicated that plaintiff scored a full scale IQ of 84, verbal IQ of 73 and Non-verbal IQ of 96." Id. The ALJ noted that these scores indicated that plaintiff would experience "some difficulty" with schoolwork, but he also noted that plaintiff was never placed on an individualized education program (IEP), "thus making one believe that his problems are not as serious as alleged by his mother." (R. 21-22).

In the area of Attending and Completing Tasks, the ALJ found that plaintiff had a less than marked limitation. (R. 23). The ALJ relied on psychological testing performed in December 2010 which showed a number of behavior and impulse control problems, and records showing

steady and consistent improvement of this behavior after receiving medication from Dr. Puls, to reach this finding. Id.

The ALJ found that plaintiff had no limitation in the area of Interacting and Relating with Others. (R. 24). The ALJ noted "[t]here is no evidence within the records to indicate this is a problem, except for the mother's statements. Her statements are not supported by any other evidence." Id.

Plaintiff had no limitation in the area of Moving About and Manipulating Objects. (R. 25). Plaintiff's only physical impairment is asthma, and neither his asthma nor any of his psychiatric disorders cause him any problems "moving about or manipulating objects." Id.

The ALJ found that plaintiff had no limitation in the domain of Caring for Yourself. (R. 26). The ALJ relied on Dr. Gaitonde's report that plaintiff's "overall functional communication, community, and daily living skills fell well within his age expectations," and he noted that "[e]ven [plaintiff's] mother said he was able to take care of his personal needs expected in his age group." Id.

Finally, the ALJ found that plaintiff had no limitation in the domain of Health and Physical Well-Being. Id. Plaintiff's only physical problem is asthma, which is controlled with medication and does not limit his activities. Id.

Because plaintiff did not have two "marked" limitations or one "extreme" limitation, the ALJ concluded that plaintiff was not disabled. (R. 27).

**Medical Evidence**

The administrative record contains both medical evidence and school records. The ALJ adequately summarized plaintiff's two school records, plaintiff's mother's two function reports, and plaintiff's four medical records contained therein, so the Court will not discuss them again. However, records of plaintiff's hospital stay from November 10, 2010 to November 12, 2010

8

were only before the Appeals Council, so the Court will briefly summarize them because they are central to plaintiff's first argument.

Plaintiff presented to St. Francis Hospital emergency room on November 10, 2010 with complaints of "respiratory distress." (R. 295; 292-379). His mother reported that he received "multiple breathing treatments via nebulizer at home" without any relief. Id. In the ER, he received two additional breathing treatments with albuterol and "Atrovent with a loading dose of corticosteroids." Id. He required oxygen to maintain his saturation levels into the mid-90s. Id. Plaintiff's mother reported no recent illnesses, or contact with any sick people to prompt the current problem. Id. Plaintiff was admitted for "continuous breathing treatment, asthma education[,] as well as weaning efforts off of oxygen requirement. No other concerns today." Id.

Intake forms noted that plaintiff lives with one cat in the home and smoke exposure in the home. Id. Plaintiff's prior medical history included asthma and no previous hospitalizations. His past surgical history showed tube insertion at the age of one for otitis media. Id.

Plaintiff received consistent breathing treatments and was weaned off supplemental oxygen over the following two days. One attending physician apparently was familiar with plaintiff from the OSU Clinic. He examined plaintiff during this hospital stay, expressing some surprise because his asthma is "typically well controlled." (R. 369). Plaintiff was discharged on November 12, 2010. Plaintiff's mother refused the offered asthma education at discharge, telling the nurse that "she did 'not need to be educated,' she knew about his asthma and what to do and was 'ready to leave,'" and that she was "'not going to watch some video.'" (R. 344). Plaintiff was discharged with instructions, prescriptions for inhalers and a corticosteroid. (R. 370). The record shows no further return visits for similar symptoms.

**ANALYSIS**

Plaintiff raises three issues on appeal: (1) that the ALJ erred in finding that plaintiff's asthma did not medically equal Listing 103.03; (2) that the ALJ's finding that plaintiff has no limitation in the domain of health and physical well-being is not supported by substantial evidence; and (3) that the ALJ's finding that plaintiff has a less than marked limitation in the domain of attending and completing tasks is not supported by substantial evidence. (Dkt. 13).

**Listing 103.03**

Plaintiff argues that the ALJ failed to apply the "plain language of Listing 103.03" to find that plaintiff's "asthma medically equals the severity of this listing." Id. at 7. Plaintiff focuses his argument around the records from his November 2010 hospital stay at St. Francis discussed above wherein he was hospitalized for two days, received emergency medical treatment, and modification of his current mediation regimen upon discharge. Plaintiff claims that "[t]his two-day stay constitutes four attacks under the six-attacks-in-a-year [sic] requirement of 103.03. While admittedly two attacks short, the severity of the four attacks detailed above [in plaintiff's brief] medically equals the severity described in this listing even if two attacks short. Claimant prays this Court agrees." Id.

In support of his argument, plaintiff quotes a part of Listing 103.03, part 103.03B, which reads

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months *or at least six times* a year. *Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks*, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R Pt. 404, Subpt. P, App. 1, § 103.03(B) (emphasis added). Clearly, plaintiff's one hospital stay in 2010, although it was for two days, which under this section equates to two

attacks, does not meet the requirements of the plain language of the agency's regulations of *six attacks in one year*, and the Court cannot change the plain language of the Listing requirement.[2]

Further, the definition of "attack" "(as defined in 3.00C)" contains specific provisions for asthma:

> *Attacks of asthma*, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, *are defined as* prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. *For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.*

20 C.F.R Pt. 404, Subpt. P, App. 1, § 3.00(C) (emphasis added). Plaintiff's medical records do not contain any records of his history with asthma. There are no records from a treating physician that "include spirometric results obtained between [asthma] attacks that document the presence of baseline airflow obstruction." Id. The only treatment records of plaintiff's asthma are contained in the St. Francis hospital records submitted to the Appeals Council. Plaintiff did not meet his burden of proof in this area.

**Domain of Health and Physical Well-Being**

Plaintiff contends that the ALJ erred in finding that plaintiff had no limitation in the domain of health and physical well-being because his "record exposes the severity of his asthma, requiring two-day hospitalizations because [plaintiff] could not breathe. The severity of this

---

[2] The plain language of section 103.03 only states that *each* inpatient hospitalization *for longer than 24 hours for control of asthma counts as two attacks*, not that each 24 hour period of hospitalization counts as two attacks, as plaintiff is calculating the two day hospital stay to equate four attacks. See 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 103.03(B).

asthma severely limits [plaintiff's] sense of physical well-being." (Dkt. 13). The ALJ explained his finding of no limitation in this domain as follows:

> The only physical problem the claimant has is asthma. He is on medication for his asthma and it does not cause any limitations in his activities.

(R. 26).

As discussed *supra*, plaintiff failed to prove the severity of his asthma beyond one two day hospital stay for an acute attack. The records of this acute attack even note that plaintiff's asthma is normally well controlled. (R. 369). Further records beyond his discharge on November 12, 2010 show that plaintiff attended school and mental health appointments with no apparent difficulty in the area of health and well-being; therefore, substantial evidence supports the ALJ's finding in this domain.

**Domain of Attending and Completing Tasks**

Plaintiff argues that the Commissioner erred when she "hung her hat on one note from Dr. Christopher Puls, M.D., Claimant's treating physician" to find that plaintiff had a less than marked limitation in the domain of attending and completing tasks. (Dkt. 13 at 9). Plaintiff alleges that one treatment note is not substantial evidence to support the ALJ's decision because by basing his decision on "one treatment note," the ALJ "ignores an entire volume of medical evidence." Id.

The Commissioner counters that the ALJ's findings are supported by substantial evidence in the record. (Dkt. 16). The Commissioner points to direct evidence under this domain showing improvement in this area beyond Dr. Puls' May 2011 treatment note upon which the ALJ relied to make his determination of a less than marked limitation. Id.

The ALJ's findings for this domain are:

> The psychological testing performed in December 2010, did show the claimant had increased behavior problems at school. The claimant had difficulty focusing, was impulsive, interrupts conversations, does not listen when spoken

> to, and has difficulty following directions. He also had problems listening to his mother and waiting his turn. The treating psychiatrist, Dr. Puls, placed the claimant on Adderall in January 2011. By May 2011, the claimant was doing well on his medication. It was helping with impulsivity and activity level and ability to stay on task. In addition, his mood was stable. There was no psychomotor restlessness, no decreased eye to eye contact, attitude was not distractible, he was not inattentive, his mood was euthymic, affect was normal, thought processes were not impaired, no thought disorder was noted, his insight was intact, there were [sic] not obsession or paranoid ideations. In addition, there were no delusion or suicidal/homicidal ideations.

(R. 23). The record shows that after plaintiff began prescription medication treatment with Dr. Puls, he experienced consistent and significant improvement in his symptoms, as noted by the ALJ throughout the decision. (R. 19, 20, 21, 22, 23, 24, 25, 26, 139-40, 214-22, 236-41, 242-47, 261-76, 283-89). While plaintiff points to evidence prior to the administration of medication, he does not provide any evidence that a marked or an extreme impairment continued unchanged after he began treatment with Adderall. Substantial evidence supports the ALJ's finding in this domain.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying plaintiff's claims for benefits is affirmed.

SO ORDERED this 4th day of June, 2015.

_____
T. Lane Wilson
United States Magistrate Judge